461 A.2d 1312

NILON BROTHERS ENTERPRISES

v.

Joseph A. LUCENTE and Mary Perrota, individually and t/a Friendly Caterers, Appellants.

NILON BROTHERS ENTERPRISES, Appellant,

v.

Joseph A. LUCENTE and Mary Perrota, individually and t/a Friendly Caterers.

Superior Court of Pennsylvania.

Argued May 26, 1982.

Filed June 24, 1983.

Petition for Allowance of Appeal Denied Oct. 5, 1983.

344

Michael F. Kraemer, Philadelphia, for Lucente, appellants (at No. 1972) and appellees (at No. 2148).

Edward R. Paul, Media, for Nilon Bros., appellant (at No. 2148) and appellee (at No. 1972).

Before BROSKY, WIEAND and BECK, JJ.

BROSKY, Judge:

We have before us an appeal and cross-appeal from the Chancellor's order denying Nilon Brothers exclusive rights to cater to Superboxes at Veterans' Stadium in Philadelphia and also prohibiting Friendly Caterers from engaging in such catering. The order forbidding Friendly's catering was based upon an enforcement of the Philadelphia Home Rule Charter requiring bidding for concession rights. In his cross-appeal, Nilon argues that, through his concession

agreement with the City of Philadelphia, he was granted the exclusive right to cater to the Superboxes.

## Facts

In 1966, the City of Philadelphia leased Veterans' Stadium to the Philadelphia National League Club (Phillies). The City reserved to itself concession rights. In 1970 following bidding, the City granted those concession rights to appellee.[1] Superboxes were then added to the Stadium. The lease between the City and the Phillies for the Superboxes did not mention catering rights, nor was any bidding conducted by the City for catering rights to the Superboxes.

With the permission of the Phillies, Friendly began catering operations in 1971, when the Superboxes were first used, and has continued them to the present time.[2] Nilon admits that he was aware of Friendly's catering activities since late 1971. Friendly has spent money in developing its business at the Stadium, including equipping a kitchen at the Stadium in an area provided by the Phillies. In 1975, Nilon instituted the present suit. After its request for a preliminary injunction was denied, and on appeal affirmed, Nilon did not further pursue this case for another year and three quarters. As noted above, the Chancellor found that Nilon was not granted exclusive rights to Superbox catering under its concession with the City. Also, the Chancellor enjoined Friendly's catering because the city did not grant that concession following bidding, as its Home Rule Charter requires.[3]

1. In relevant part, the concession agreement provides:
 (c) It will be the obligation of the Concessionaire to offer for sale all foods and beverages designed for human consumption whether served at the counters or vended at stands or dispensed by itinerant venders about the premises or dispensed from vending machines...
 It will be noted that no reference is made to Superboxes.

2. The Chancellor's order enjoining appellant's catering was stayed pending this appeal.
 At least three other firms, including appellee, have also catered to Superboxes.

3. For this issue, Nilon was asserting the municipality's interests in its position as taxpayer.

## Laches

Friendly raised the affirmative defense of laches as New Matter and later in the proceedings as required for its preservation for appellate review.[4]

> Laches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him.

*Grote's Estate,* 390 Pa. 261 at 269–70, 135 A.2d 383 at 387 (1957). Quoted in *Silver v. Korr,* 392 Pa. 26 at 30, 139 A.2d 552 at 555 (1958), and *Thompson v. Curwensville Water Co.,* 400 Pa. 380 at 385, 162 A.2d 198 at 201 (1960). "Laches, unlike the statute of limitations, does not operate solely by the passage of time." *Lehner v. Montgomery,* 180 Pa.Super. 493 at 501, 119 A.2d 626 at 630 (1956).

> The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice.

*Wilson v. King of Prussia Enterprises, Inc.,* 422 Pa. 128 at 133, 221 A.2d at 123 at 126 (1966). The rationale is that "acquiescence is presumed from delay." *Leuschen v. Cook,* 145 Pa.Super. 568 at 576, 21 A.2d 496 at 499 (1941).

 In terms of the time element, a lack of due diligence in *prosecuting* one's claim—as well as a lack of due diligence in instituting it—can activate laches. *Fidelity & Casualty Co. of New York v. Kizis,* 363 Pa. 575 at 578, 70 A.2d 227 at 229 (1950).

 Lastly, even though Nilon's argument on the Home Rule Charter is on behalf of the interests of the municipality of Philadelphia, this will not prevent the application of laches. Laches can be imputed to a municipality itself. *In*

---

**4.** The Chancellor's failure to address this defense in his findings cannot bar our acting upon this preserved issue.

*re Heidorn's Appeal*, 412 Pa. 570 at 573, 195 A.2d 349 at 351 (1963). It follows that when a taxpayer is grounding his suit in the interests of the municipality, that laches can also be applied.

■ Given the above quoted law regarding laches, we are satisfied that it is just to apply the doctrine here. Nilon delayed approximately three and a half years in instituting its suit and delayed a further year and a half in prosecuting its suit following the rejection on appeal of its request for a preliminary injunction. Nilon offers no excuse or explanation but merely argues that Friendly benefitted from his catering. We reject this argument. Obviously, any defendant benefits from the activity sought to be enjoined or he wouldn't contest the suit. The requisite prejudice here is not to be defined in these terms.

Rather, the prejudice resulting from the delay will be the greater adverse consequences of the grant of the sought for injunction. In the context of Nilon's presumed acquiescence, Friendly has expanded his business, invested capital in equipment and concentrated the bulk of his activities in the Stadium catering. The adverse consequences of the injunction would have been immeasurably less serious had Nilon asserted its claim with reasonable promptness. Laches is a bar to Nilon's action here.

The order enjoining Friendly from catering to the Superboxes is, therefore, reversed; and, consequently, the refusal to grant Nilon exclusive catering rights is affirmed.[5]

WIEAND, J., files dissenting opinion.

WIEAND, Judge, dissenting:

The lease agreement for Veterans Stadium between the City of Philadelphia, lessor, and the Philadelphia National League Club, Inc., lessee, reserved to the lessor "the exclusive right to offer for sale and sell ... [a]ll foods and beverages designed for human consumption ...." Pursu-

---

5. This result does not, of course, interfere with Nilon's catering to Superboxes, along with others.

ant thereto, the City of Philadelphia entered into an agreement granting to Nilon Brothers Enterprises, the appellee herein, "the exclusive privilege of operating the Stadium Club and Restaurant and General Concessions at [Veterans Stadium]. . . ." This included specifically "food, drink, souvenirs, etc." The agreement required that appellee, in exchange for such exclusive privilege, pay a designated percentage of gross receipts to the City of Philadelphia.

When superboxes were subsequently added to the stadium, Joseph A. Lucente and Mary Perrota, trading as Friendly Caterers, provided food catering services to the occupants. They did so at the instance of the owners of the boxes and with the consent of the Phillies and Eagles, who were tenants of the stadium, but without the consent of the City of Philadelphia and without complying with the bidding procedure required by the Philadelphia Home Rule Charter.

On the basis of these facts, the trial court entered an order enjoining Friendly Caterers from conducting a "food service business within the confines of Veterans Stadium, including the Super Boxes thereof." Friendly Caterers appealed.

A majority of this Court makes an independent determination—the trial court did not so find—that appellee was guilty of laches and reverses the injunction entered by the trial court. I am unable to agree with this disposition; and, therefore, must respectfully, but vigorously, dissent.

The essential elements of laches are inexcusable delay in instituting suit and prejudice resulting to defendant from such delay. It is an equitable defense; its existence depends on the particular circumstances of each case. Many decisions teach that laches should not be declared by an appellate court unless the existence thereof is clear on the face of the record. Laches is an issue of fact, primarily addressed to the sound discretion of the trial court. The exercise of the trial court's discretion regarding the defense of laches will not be disturbed in the absence of an abuse thereof. *In Re Estate of Marushak*, 488 Pa. 607, 610, 413 A.2d 649, 651 (1980); *Leedom v. Thomas*, 473 Pa. 193,

200–201, 373 A.2d 1329, 1332 (1977); *Siegel v. Engstrom,* 427 Pa. 381, 386, 235 A.2d 365, 368 (1967); *Thomson v. Mid-State Theatres, Inc.,* 403 Pa. 111, 113, 168 A.2d 737, 738 (1961); *Manson v. First National Bank in Indiana,* 366 Pa. 211, 215–216, 77 A.2d 399, 401 (1951); *Margolis v. Blecher,* 364 Pa. 234, 236, 72 A.2d 127, 128 (1950); *Hansel v. Hansel,* 300 Pa.Super. 548, 556–559, 446 A.2d 1294, 1298–1300 (1982); *Anaconda Co. v. Metric Tool & Die Co.,* 485 F.Supp. 410, 427 (E.D.Pa.1980).

The trial court in the case *sub judice* did not find that Nilon had been guilty of laches. In ruling otherwise, the majority has made an independent determination and has substituted its discretion in a matter peculiarly within the purview of the trial court. My review of the facts and circumstances presented to the trial court does not disclose an abuse of that court's discretion. Indeed, even the majority seems hard put to discern prejudice where, as here, appellants have continued to serve food in the stadium throughout the purported delay.

I would affirm the order of the trial court.