J-A06021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GREGORY RIVERS, ADMINISTRATOR OF THE  ESTATE OF: HELEN MILES, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ERIC MOORE AND PARRISH REAL ESTATE | : | |
| | : | |
| Appellees | : | No. 2547 EDA 2019 |

Appeal from the Judgment Entered March 29, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  160802062

BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED JULY 17, 2020**

Appellant, Gregory Rivers, Administrator of the Estate of Helen Miles, Deceased, appeals from the judgment entered in the Philadelphia County Court of Common Pleas in favor of Appellee, Parrish Real Estate, in this quiet title action.  We affirm.

The relevant facts and procedural history of this case are as follows.  On October 29, 1968, Helen Miles ("Decedent") and her son, Jerry Miles (Appellant's brother), purchased real property located at 1638 Parrish Street in Philadelphia, Pennsylvania ("Property").  Decedent later gained sole interest in the Property *via* a deed Decedent and Jerry Miles executed on May 13,

_____

[*] Former Justice specially assigned to the Superior Court.

1970. Decedent died in March 1985. Decedent's children, including Appellant, survived Decedent. On October 2, 2006, Appellant and his siblings executed a deed giving Appellant sole interest in the Property in exchange for $1.00. Appellant recorded the deed on February 12, 2008.

On January 18, 2013, Appellant executed a quitclaim deed transferring title of the Property to Eric Moore for $1.00. The deed was recorded on March 13, 2013. In September 2013, Appellant filed a quiet title action against Mr. Moore. The case was settled, discontinued, and ended approximately one year later.

On November 24, 2015, Appellee Parrish Real Estate purchased the Property from Mr. Moore for $120,000.00. The Property was essentially a shell at the time Parrish Real Estate purchased it. Parrish Real Estate expended substantial funds to develop the Property, which was valued at approximately $550,000.00, as of March 2018. On July 29, 2016, Appellant received letters of administration for Decedent's estate, and on August 16, 2016, Appellant filed a quiet title action against Mr. Moore and Parrish Real Estate.

On August 3, 2017, Parrish Real Estate filed an answer and new matter raising a host of affirmative defenses, including the doctrine of laches. Parrish Real Estate also filed a counterclaim to quiet title against Appellant and a cross-claim against Mr. Moore for breach of warranty of title. On August 23, 2017, Appellant filed a reply to Parrish Real Estate's new matter and

counterclaim.

The court held a bench trial on September 17 and 20, 2018. Mr. Moore did not appear. On December 18, 2018, the court entered a verdict in favor of Parrish Real Estate and against Appellant. The court also entered a *non pros* on Appellant's claim against Mr. Moore. Appellant filed a premature notice of appeal on December 28, 2018, docketed at 176 EDA 2019. On January 4, 2019, Appellant filed in the trial court a motion for leave to file post-trial motions *nunc pro tunc*, which the trial court granted on February 6, 2019. Appellant timely filed post-trial motions *nunc pro tunc* on February 13, 2019. On February 19, 2019, this Court dismissed without prejudice Appellant's premature appeal at 176 EDA 2019.

The trial court denied Appellant's post-trial motions and entered judgment on the verdict on March 29, 2019. Appellant filed the current timely notice of appeal on April 24, 2019. On April 26, 2019, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on May 16, 2019.

Appellant raises the following issue on appeal:

> Whether title to a real estate property can be conveyed *via* a Quit Claim Deed[?]

(Appellant's Brief at 7).

Appellant argues he did not gain an interest in the Property until he received letters of administration for Decedent's estate in 2016. Appellant asserts that he did not have an interest in the Property at the time he executed

the January 2013 deed to Mr. Moore, and as a result, the deed was invalid and conveyed no interest in the Property to Mr. Moore. Consequently, Appellant contends Mr. Moore could not have validly transferred the Property to Parrish Real Estate. Appellant concludes Decedent's estate retains possession of the Property and Appellant is entitled to judgment in his favor and against Parrish Real Estate. We disagree.

Preliminarily, "[t]he doctrine of laches is an equitable bar to the prosecution of stale claims and is the practical application of the maxim[:] those who sleep on their rights must awaken to the consequence that they have disappeared." *Fulton v. Fulton*, 106 A.3d 127, 131 (Pa.Super. 2014) (internal quotation marks omitted). "The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue." *Id.*

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay.

*Id.* (quoting *In re Estate of Scharlach*, 809 A.2d 376, 382-83 (Pa.Super. 2002)). "The question of laches itself, however, is factual…and is determined by examining the circumstances of each case." *Id.* Laches arises when a party's position or rights "are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to

permit presently the assertion of a claim against him." ***Nilon Bros. Enterprises v. Lucente***, 461 A.2d 1312, 1314 (Pa.Super. 1983). "[P]rejudice to the defendant must be shown as a prerequisite to the application of laches." ***Miller v. Hawkins***, 416 Pa. 180, 190, 205 A.2d 429, 434 (1964).

Instantly, following trial in this case, the trial court made the following conclusions of law:

> **B. CONCLUSIONS OF LAW**
>
> 1. At the time [Appellant] signed the deed to [Mr.] Moore he had the right to convey the [Property] by virtue of the quitclaim deed from his siblings to him.
>
> 2. [Appellant] confirmed the conveyance to [Mr.] Moore by never changing the title.
>
> 3. Pursuant to the Pennsylvania recording statute and case law, Parrish Real Estate…is a bona fide purchaser of the [Property] from [Mr.] Moore, without notice based on the evidence introduced at trial and is the owner of said real estate.
>
> 4. Parrish Real Estate…is the owner of [the Property].
>
> 5. [Appellant] is barred by the doctrine of laches from pursuing a claim to quiet title after failing to change title to the [Property].
>
> 6. The [c]ourt will find in favor of Parrish Real Estate…against [Appellant] in quiet title and will quiet title to [the Property] in Parrish Real Estate…on its counterclaim.

(Findings of Fact/Conclusions of Law, dated December 18, 2018, at 4-5 unpaginated). In its Rule 1925(a) opinion, the trial court added:

[Appellant] in his 1925(b) statement asserts the [c]ourt erred in finding his claim was effectively barred due to laches. The record of the case clearly belies that assertion.

In 2013, [Appellant] filed a quiet title action against [Mr.] Moore. On October 30, 2014, [Appellant] filed a *praecipe* to settle, discontinue, and end the action. Title to the [Property] was never changed. No *lis pendens* was ever filed to give notice of any issue concerning title to the [Property].

In 2015, [Mr.] Moore conveyed the [P]roperty to Parrish Real Estate in an arm's-length, good faith transaction. Parrish Real Estate then invested significant time and money developing the [P]roperty.

It was not until August of 2016 that [Appellant] filed the instant action. Parrish Real Estate was clearly prejudiced by [Appellant's] inaction.

Furthermore, [Appellant's] credibility was called into question when he claimed he was misled by…[Mr.] Moore. [Appellant] claimed he signed [a] deed to [Mr.] Moore when he really wanted to sign the [P]roperty over to his daughter. There is no evidence to support any of [Appellant's] contentions.

(Trial Court Opinion, filed October 10, 2019, at 2-3). The record supports the court's application of the doctrine of laches to this case. **See *Fulton, supra*.**

Here, Appellant sold the Property to Mr. Moore in January 2013.[1] In

---

[1] Appellant claimed at trial that his sale to Mr. Moore was a fraudulent transaction. Specifically, Appellant testified that he did not ever intend to transfer the Property to Mr. Moore. Rather, Appellant maintained his intent was to either transfer the Property to his daughter or add his daughter's name to the deed. Appellant admitted the deed bore Appellant's signature as grantor and Mr. Moore's signature as grantee. Appellant also admitted he signed before a notary, but insisted he was distracted by a phone call during the notary process. Appellant maintained that he paid Mr. Moore (Appellant's friend of 20 years) $600.00 to take this deed and the deed of another property

September 2013, Appellant filed a quiet title action against Mr. Moore. As the trial court indicated, Appellant filed no *lis pendens* on the Property to indicate his alleged claim to the Property.[2] Appellant's lawsuit against Mr. Moore was marked settled, discontinued, and ended in October 2014. Appellant then waited until after Mr. Moore sold the Property to Parrish Real Estate (which expended approximately $315,000.00 to develop the Property), to obtain letters of administration for Decedent's estate and file the current quiet title action. Appellant's delay in asserting his alleged claim to the Property prejudiced Parrish Real Estate, as evidenced by Parrish Real Estate's significant investment in time and money to develop the Property, which was formerly nothing more than a shell. Thus, we agree with the trial court that the doctrine of laches bars Appellant's claim. ***See Fulton, supra***. Accordingly, we affirm.

Judgment affirmed.

---

to the Recorder's Office and, during that point, Mr. Moore must have switched the cover sheet to the deed. Appellant alleged he became aware of the "fraudulent transfer" approximately four or five months later. (***See*** N.T. Trial, 9/17/18, at 9-75). The trial court did not credit Appellant's testimony. (***See*** Trial Court Opinion at 2-3).

[2] ***See Barak v. Karolizki***, 196 A.3d 208, 211 n.2 (Pa.Super. 2018) (stating: "A *lis pendens*, once properly indexed, provides notice to potential buyers that a piece of property is in litigation. Anyone who buys such property takes title subject to the lawsuit's outcome. Hence, so long as a *lis pendens* notice remains of record, no one can claim, in good faith, to have purchased the property without knowledge of the litigation. In other words, anyone who buys real estate under *lis pendens* risks that the court might ultimately rule that they did not purchase good title and strip them of ownership").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/17/20</u>